Filed 6/3/14  Bent v. County of Los Angeles Assessment Appeal Bd. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PATRICK O. BENT, | B249257 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS140900) |
| v. | |
| COUNTY OF LOS ANGELES ASSESSMENT APPEAL BOARD et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Joanne B. O'Donnell, Judge.  Affirmed in part, reversed in part and remanded.

The Law Office of Simone K. Easum and Simone K. Easum for Plaintiff and Appellant.

John F. Krattli, County Counsel and Albert Ramseyer, Deputy County Counsel for Defendants and Respondents.

_____

In a petition for writ relief and complaint for declaratory relief, Patrick O. Bent (Bent) alleged that the Los Angeles County Assessment Appeals Board (Board) erroneously denied his tax appeals as untimely. He sought, inter alia, an order compelling the Board to hear the tax appeals on the merits and decide whether his properties were improperly reassessed after a faulty change in ownership finding. The trial court dismissed the case after sustaining a demurrer without leave to amend on the grounds that Bent's sole remedy was a tax refund action.[1]

With respect to the petition for writ relief, the trial court erred. Under *Sunrise Retirement Villa v. Dear* (1997) 58 Cal.App.4th 948 (*Sunrise*), a trial court can reverse a finding by an assessment appeals board that a tax appeal was untimely and compel it to decide change in ownership issues. In contrast, the complaint for declaratory relief was properly dismissed. It raised issues bearing on the timeliness of Bent's tax appeals, which means it was redundant, aimed at past events rather than rights that will decide future controversies, and otherwise inappropriate for determination under Code of Civil Procedure section 1061. (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 909 (*Jolley*) ["Declaratory relief generally operates prospectively to declare future rights, rather than redress past wrongs"].) We note that *Sunrise* does not permit a declaratory relief action. Also, declaratory relief cannot otherwise be used to circumvent administrative remedies. (*Rickley v. County of Los Angeles* (2004) 114 Cal.App.4th 1002, 1015 (*Rickley*).)

We reverse the dismissal of the petition for writ relief and remand for further proceedings. In all other respects, we affirm.

---

[1] The respondents are the Board, Los Angeles County, John Noguez (Noguez) and Santos Kriemann (Kriemann) (collectively the County). According to the pleading, Noguez was the Los Angeles County Assessor until he was succeeded by Kriemann, who became the Acting Assessor.

## FACTS

In his petition for writ relief and complaint for declaratory relief, Bent alleged: Bent and Evans Sechrest (Sechrest) were each 50 percent partners in a general partnership that, inter alia, owned two properties in Venice, one in Vernon and one in North Hollywood. Sechrest died on February 12, 2008, and devised his partnership interest to Bent. Eventually, pursuant to a probate court order, Bent received a transfer of 100 percent of the partnership's properties. Noguez issued notices that the properties in Vernon and North Hollywood were being reassessed on the grounds that there had been a change in ownership in 2008. Subsequently, Bent filed appeals with the Board and claimed that the properties should not have been reassessed because, under Revenue and Taxation Code section 64, subdivision (c)(2),[2] there is no change in ownership of real property held by a partnership when one partner acquires all of the remaining ownership interests in that partnership. The Board, however, concluded that Bent's tax appeals were untimely and denied them on that basis.

Bent alleged that the Board erred because the tax appeals were timely filed within the one-year statute of limitations, or because the limitations periods relied upon by the Board were unconstitutional.

In the prayer for relief, Bent requested a peremptory writ of mandate directing the Board to hear his tax appeals on the merits. Also, Bent requested the following declarations: the Board has the equitable power to hear the tax appeals on the merits;

---

[2]     All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

Section 64, subdivision (c)(2) provides: "On or after January 1, 1996, when an owner of a majority ownership interest in any partnership obtains all of the remaining ownership interests in that partnership or otherwise becomes the sole partner, the purchase or transfer of the minority interests, subject to the appropriate application of the step-transaction doctrine, shall not be a change in ownership of the real property owned by the partnership."

Noguez committed assessor error pursuant to section 1603, subdivision (c)[3] when he found that a change in ownership occurred on February 12, 2008; Noguez's assessor error triggered the one-year statute of limitations set forth in section 1603, subdivision (c), making the tax appeals timely; because Noguez engaged in criminal activities in the assessor's office that interfered with his ability to proceed according to the law, he is deemed to have committed assessor error under section 1603, subdivision (c); if section 1603, subdivision (c) does not apply to save Bent's tax appeals, then that statute is unconstitutionally vague; and section 1605, subdivision (d)[4] is unconstitutional on its face and as applied.

The County demurred. The trial court sustained the demurrer without leave to amend. It reasoned, inter alia, that a tax refund action was Bent's exclusive remedy and therefore a petition for writ of mandate could not be used to challenge the merits of the Board's assessment decision. In addition, the trial court explained that the requests for declaratory relief were barred because Bent had adequate remedies at law through the filing of a tax refund action.

This timely appeal followed.

---

[3] In the prayer, Bent cites section "1603[, subd. (b)(4)(c)]." From context, it is clear he meant to cite section 1603, subdivision (c), which provides: "The application [for reduced assessment to the county board] may be filed within 12 months following the month in which the assessee is notified of the assessment, if the party affected or his or her agent and the assessor stipulate that there is an error in the assessment as the result of the exercise of the assessor's judgment in determining the full cash value of the property and a written stipulation as to the full cash value and assessed value is filed in accordance with Section 1607."

[4] The prayer requests a declaration regarding section "1605[, subd. (b)](2)(c)." Presumably, Bent meant to request a declaration as to section 1605, subdivision (c). It provides: "The board of supervisors of any county may by resolution require that the application for reduction pursuant to subdivision (a) of Section 1603 be filed with the clerk no later than 60 days after the date of mailing printed on the tax bill or the postmark therefor, whichever is later." (§ 165, subd. (c).)

4

## DISCUSSION

### I. Standard of Review.

"On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.]" (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.) We must affirm if any stated ground for the demurrer is valid. (*Lee v. Bank of America* (1990) 218 Cal.App.3d 914, 922.)

### II. Tax Appeal Law.

Article XIII, section 32 of the California Constitution provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

"[T]he Legislature has statutorily established a three-step process for handling challenges to property tax assessments and refund requests. The first step is the filing of an application for assessment reduction under section 1603, subdivision (a), which provides: 'A reduction in an assessment on the local roll shall not be made unless the party affected or his or her agent makes and files with the county board [of equalization] a verified, written application showing the facts claimed to require the reduction and the applicant's opinion of the full value of the property.' The second step, which occurs after payment of the tax, is the filing of an administrative refund claim under section 5097, subdivision (a), which provides in relevant part that '[n]o order for a refund . . . shall be made, except on' the timely filing of a verified claim for refund. By statute, an application for assessment reduction filed under section 1603 'also constitute[s] a sufficient claim for refund under [section 5097] if' it states that it 'is intended to constitute a claim for refund. If [it] does not so state, [the applicant] may thereafter and within the [specified time] period . . . file a separate claim for refund of taxes extended on the assessment which the applicant applied to have reduced pursuant to [s]ection

5

1603. . . ' (§ 5097, subd. (b).)  The third and final step in the process is the filing of an action in superior court pursuant to section 5140, which provides that a person who paid the property tax may bring an action in superior court 'against a county or a city to recover a tax which the board of supervisors of the county or the city council of the city has refused to refund on a claim filed pursuant to Article 1 (commencing with Section 5096) of this chapter.'  A court action may not 'be commenced or maintained . . . unless a claim for refund has first been filed pursuant to Article 1 (commencing with Section 5096).'  (§ 5142, subd. (a).))"  (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1307–1308 (*Steinhart*) [involving a challenge to a finding that there was a change in ownership under Proposition 13]; *Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 923 (*Little*) [an "aggrieved taxpayer's remedy is not to seek administrative mandate pursuant to Code of Civil Procedure section 1094.5, but to pay the tax and file suit . . . for a refund"].)

**III.  *Sunrise*.**

As established by cases such as *Steinhart* and *Little*, an aggrieved taxpayer must generally file a tax refund action after losing a tax appeals before an assessment appeals board.  *Sunrise* is an exception.

The facts of *Sunrise* were these.  In 1986, an assessor determined that there had been a change in ownership of property owned by the plaintiffs, and that he had to redetermine the base year for purposes of property valuation under Article XIII A of the California Constitution.  In 1994, the plaintiffs discovered facts which they claimed showed that the assessor erred in determining that ownership changed.  They eventually appealed to the local assessment appeals board.  It never reached the merits, ruling that it lacked jurisdiction because the plaintiffs' appeal was filed more than four years after the assessor had redetermined the base year value, and it therefore ran afoul of the statute of limitations set forth in section 80, subdivision (a)(3).  The plaintiffs filed a petition for writ of mandate requesting that the trial court direct the assessor to correct its 1986 base-year value to reflect no change in ownership or, in the alternative, to compel the assessment appeals board to hear the plaintiffs' application on the merits.  (*Sunrise*,

6

*supra*, 58 Cal.App.4th at pp. 951–952.)  The trial court granted the first request, and the assessor appealed.  (*Ibid*.)  According to *Sunrise*, the trial court properly determined that the tax appeal was timely.  (*Id*. at pp. 960–961.)  However, instead of correcting the assessment, it should have remanded the matter to the assessment appeals board to reach the merits of the tax appeal.  (*Ibid*.)

Regarding the directed remedy, the court explained:  "If the administrative agency is empowered to decide the factual issue in the first instance and it erroneously fails or refuses to do so, either administrative or traditional mandate is available to compel the agency to hold a hearing.  [Citations.]  In such cases the proper remedy is to order the agency to perform its statutorily mandated duty—but the court may not step into the shoes of the agency and perform its function for it, since mandate does not lie to control the discretion conferred in a public agency.  [Citation.]"  (*Sunrise*, *supra*, 58 Cal.App.4th at p. 955.)

## IV.  The Petition for Writ Relief.

Bent argues that *Sunrise* is directly on point and permits the trial court to determine whether the tax appeals were timely.  The County, however, contends that *Sunrise* is inapplicable.

We agree with Bent.

As required by precedent, we must take the allegations in Bent's petition for writ relief as true.  He alleged that he filed tax appeals challenging a change in ownership, and that the Board erroneously denied his petition as untimely.  He requested an order compelling the Board to reach the merits.  Under this factual scenario, *Sunrise* is controlling.  We therefore conclude that the trial court erred when it sustained the County's demurrer on the grounds that Bent's sole remedy was to challenge the reassessment in a tax refund action.

We note that the trial court read the petition as alleging that the Board rendered a decision on the merits.  In the tentative ruling that it later adopted as its order, the trial court supported its determination by citing paragraphs 63 through 70 and 76 through 79 of the petition/complaint.  But none of those paragraphs allege that a decision on the

7

merits was rendered. Fairly read, they allege that the Board acted arbitrarily by dismissing the action on procedural grounds and refusing to render a substantive decision. And to the degree there is any ambiguity as to whether the petition/complaint alleged that the Board reached the merits of Bent's appeal, we remind the County that a reviewing court must liberally construe the pleadings with a view to attaining substantial justice among the parties. (*Gerawan Farming, Inc. v. Kawamura* (2004) 33 Cal.4th 1, 32.) Liberally construed, the allegations establish that the Board never decided whether the reassessments were proper. [5]

The County argues that *Sunrise* is problematic because it is inconsistent with the constitutional directive that refund actions are to be conducted in accordance with a statutorily prescribed process. Tacitly, the County suggests that we should eschew *Sunrise* as precedent. We fail to see any conflict between *Sunrise*, the California Constitution and the statutory scheme. All *Sunrise* permits is writ relief compelling an assessment appeals board to decide an appeal. A decision on the merits by an assessment appeals board is part of the process contemplated by the Legislature, and the process is exalted by *Sunrise*, not defeated. Rounding out our analysis, we make a policy observation: appeals boards should decide assessment challenges and refund claims before the courts get involved. Undoubtedly, assessment appeals boards will resolve some cases in a manner that eliminates the necessity of tax refund actions, which will alleviate court dockets.

Next, the County argues that Bent failed to demonstrate that he lacks an adequate remedy at law. But "'the general rule' in California is that 'a taxpayer seeking judicial relief from an erroneous assessment must . . . exhaust[] his remedies before the administrative body empowered initially to correct the error. [Citations.]' [Citation.]" (*Steinhart, supra,* 47 Cal.4th at p. 1308; *Little*, *supra*, 155 Cal.App.4th at p. 923 [the

---

[5] After remand, the County will have the opportunity to pierce the pleadings in connection with a summary judgment motion or trial and prove that the Board rendered a decision on the merits. If the Board rendered a decision on the merits, that decision must be challenged in a tax refund action.

"'appeals process is essential to filing a subsequent claim for a refund in superior court, and skipping this step will usually result in the dismissal of the suit for failure to exhaust an available administrative remedy'"].) To exhaust his administrative remedies, Bent must first file a timely claim before the Board. (*Metropolitan Culinary Services, Inc. v. County of Los Angeles* (1998) 61 Cal.App.4th 935, 948 [the taxpayer "failed to exhaust its administrative remedies by making a timely claim for refunds"].) Thus, before Bent can file a tax refund action, he must have his claim heard by the Board.[6] Our reasoning leads to one conclusion: Bent does not have an adequate remedy at law, i.e., he cannot seek a refund unless he first obtains the requested writ relief.

Based on the foregoing, we conclude that the trial court erred when it ruled that Bent's exclusive remedy is a tax refund action and he is barred from seeking relief in the nature of a peremptory writ of mandate directing the Board to decide his tax appeals on the merits. In reaching this conclusion, we do not decide whether the pleading is sufficient to show that Bent's appeals before the Board were timely, or that writ relief should issue. Insofar as the County argues that Bent's appeals before the Board were untimely, we decline to reach the issue because that argument was not asserted as a ground for the demurrer. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 201 [a reviewing court may affirm a dismissal following an order sustaining a demurrer on any grounds stated in the demurrer].)

All other issues are moot.

---

[6] The County argues that Bent could relitigate the statute of limitations issue in a tax refund action pursuant to section 5140. But the County did not cite any law to support this argument, nor did it explain why the Board's determination would not give rise to issue preclusion.

## V. The Requests for Declaratory Relief.

Bent argues that his requests for declaratory relief—which pertain to the second and third causes of action in the petition/complaint—should not have been dismissed because they were linked to his valid request for writ relief. But Bent did not cite any case law to support his position, or to otherwise show trial court error. As a result, the following principles come into play: "'[E]very brief should contain a legal argument with citation to authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' [Citation.] [¶] It is the duty of appellant's counsel, not of the courts, 'by argument and the citation of authorities to show that the claimed error exists.' [Citation.]" (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050.)

Bent's waiver aside, we conclude that a declaratory relief action is not appropriate here because it overlaps the petition for writ relief by seeking redress for events in the past rather than a declaration of future rights. (*Jolley*, *supra*, 213 Cal.App.4th at p. 909.) Also, it cannot be used to bypass "the prescribed constitutional and statutory remedies" available for taxpayers. (*Rickley, supra,* 114 Cal.App.4th at p. 1015 [instead of seeking declaratory relief regarding whether her tax bill had been paid, the taxpayer was required to "pay the disputed amount, exhaust her administrative remedies, and sue for a refund"].) He must exhaust administrative remedies before obtaining judicial review. (*Ibid*.) The only exception recognized by case law is a *Sunrise* type petition for writ relief to compel an assessment appeals board to abide by its duty to decide a tax appeal on the merits.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The matter is remanded for further proceedings on Bent's petition for writ relief. The parties shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
           ASHMANN-GERST


We concur:


_____, J.
      CHAVEZ


_____, J.[*]
      FERNS

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.